**John BARNES, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, COMPANY OF CIGNA CORPORATION, a business corporation, Defendant.**

Civ. No. 4–84–867.

United States District Court,
D. Minnesota,
Fourth Division.

March 20, 1986.

Charles S. Zimmerman, Zimmerman, Caplan and Reed, Minneapolis, Minn., for plaintiff.

David R. Hols, Felhaber, Larson, Fenlon & Vogt, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff John Barnes brought this action against defendant Insurance Company of North America (INA) alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, and breach of contract. He seeks compensatory damages and attorney's fees. Jurisdiction is based on 29 U.S.C. §§ 626(b), 1140, 28 U.S.C. §§ 1331, 1337, and pendent jurisdiction. The matter is now before the court upon defendant's motion for summary judgment on all counts of plaintiff's complaint.

*Background*

A majority of the relevant facts are not disputed. Plaintiff worked for INA since September of 1973 and for seven years prior to 1958. He was terminated October 12, 1982. At the time of his termination, he was a Marketing Representative and was 58 years old.

In April of 1982, the Minneapolis offices of INA and Aetna Insurance Company were combined because of the merger of the two businesses. The merger was completed by October of 1982. The combination produced a reduction in the number of available positions and the elimination of others, including the position held by plaintiff. To accommodate this reduction in force, INA adopted an integration plan, comparing the available employees to the available positions. Plaintiff, according to defendant, was considered for the position of Production Underwriter, marketing emphasis. Eleven candidates sought seven such positions.

Richard Dahlin, an INA Marketing Manager, was responsible for determining which of these eleven would be chosen to fill the seven available Production Underwriter positions. Dahlin ranked each employee based on underwriting and overall experience. Plaintiff was given the lowest ranking of the eleven and was subsequently terminated along with three others, two of whom were less than 35 years of age. Of the seven who were retained, at least one was in the protected age group. No new person was hired to replace Barnes.

Plaintiff contends that the person in charge of filling the available positions failed to discuss the underwriting position with the marketing representatives he supervised or to review their backgrounds for underwriting experience. Plaintiff claims that the evidence will show that he had prior underwriting training and experience with a previous employer and that the three younger INA employees who were retained had no prior underwriting experience. He thereby asserts that age was a determining factor in defendant's decision not to retain him.

He also notes that defendant failed to give him a performance review, which was due eight months before he was terminated. He claims that the three younger INA marketing representatives were all given timely reviews. Barnes alleges that this failure resulted in reduced employment benefits violating § 1140 of ERISA, 29 U.S.C. § 1140.

Additionally, Barnes alleges that INA made no effort to try and carry out an internal job search or to relocate him. He believes that this failure amounted to a breach of contract on the part of INA. According to INA, the internal job search policy in effect when Barnes was terminated was limited to the Minneapolis office. Since the Minneapolis office was reducing personnel, defendant states that there were simply no vacancies for which plaintiff could be considered.

*Discussion*

*The ADEA Claim*

The most common formula for establishing a prima facie age discrimination case is to meet the criteria set forth in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as adapted to ADEA cases. *See Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). The plaintiff must show: (1) that he or she is within a protected age group, (2) that he or she met applicable job qualifications, (3) that despite these qualifications, he or she was discharged, and (4) that, after the discharge the position remained opened and the employer continued to seek applications from persons with similar qualifications. *Halsell*, 683 F.2d at 290. *See also Cova v. Coca-Cola Bottling Co.*, 574 F.2d 958 (8th Cir.1978).

If the prima facie case is made, the burden shifts to the employer to articulate a valid reason other than age for firing the plaintiff. If the employer does this, the burden shifts back to the plaintiff to demonstrate that the reasons advanced by the employer are pretextual. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Because direct evidence of discrimination in an ADEA case is rarely, if ever, discovered, evidence creating an inference of discrimination will suffice to establish a prima facie case. The evidence offered by Barnes must be read in a light most favorable to him on a motion for summary judgment. *E.g., Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983).

Defendant's primary contention is that because the undisputed evidence shows that Barnes was not replaced, he has failed to make out the fourth element of a prima facie case. It states that there was a necessary reduction in personnel and that plaintiff was less qualified than other employees for the positions remaining. INA claims that there is no evidence of a casual connection between plaintiff's age and the adverse employment action about which he complains.

The Eighth Circuit addressed the particular issues involved in ADEA cases resulting from a reduction in force by the employer in *Holley v. Sanyo Mfg. Inc.*, 771 F.2d 1161 (8th Cir.1985).[1] The court found that rigid application of the four part standard to reduction in force cases would be inappropriate, since plaintiffs would nearly always meet the first three requirements but never the fourth. Rather than simply applying the *McDonnell Douglas* standard, the *Holley* court determined that "some additional showing should be necessary to make a prima facie case in a reduction-in-force situation." *Id.* at 1165. This additional evidence must show that age was a factor in the employee's termination. *Id.* at 1166.

◼ Under the *Holley* standard this court cannot find as a matter of law that plaintiff has failed to satisfy his burden of showing a prima facie case. Initially, Barnes has met the first three elements of a prima facie case. He has demonstrated that he is within the protected age group, that he met job qualifications, and that despite his qualifications he was discharged. Plaintiff has also offered evidence showing that he had more qualifications for the consolidated underwriting position than the younger employees who were retained. *See* Barnes depo. Additionally, plaintiff cites various numbers showing the percentage of retained and terminated employees within the protected class and the average ages of both groups. He claims that these statistics, among other things, show a lowering of the average age of the retained employees.

Upon this record, material issues of fact remain for trial so summary judgment on this count should be denied.

---

1. The reduction in force in *Holley* was the result of an economic downturn. Although INA's reduction in force stemmed from an office merger, the court finds the reasoning in *Holley* to be fully applicable to the facts here.

*Breach of Contract Claim*

■ Plaintiff claims that INA failed to make any job search for him following his termination on October 12, 1982. According to him, this failure violated INA's internal job search policy,[2] and resulted in a breach of contract.

Under Minnesota law, express provisions concerning employment procedure, when communicated to an employee, may contractually modify and at-will employment agreement. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983). Under *Pine River,* however, definite and detailed language is required before provisions like those in the job search policy become enforceable as part of the original employment contract. *Id.* at 626; *Hunt v. IBM Mid America Emp. Fed. Cred. Union,* 358 N.W.2d 461 (Minn.App.1984).

The court does not find it necessary to decide whether the job search policy became a part of Barnes' contract with defendant. Even if the policy is considered part of the employment agreement, there is no showing in the record that INA violated the terms. Construing the evidence in a light most favorable to the plaintiff, the court finds no material issue of fact on this point. Nothing in the record indicates that INA failed to uphold the terms stated in the job search policy. The one position in Minneapolis for which plaintiff was eligible was not filled and was later combined with a managerial position for which he was not eligible. Absent any genuine issue of fact, summary judgment is appropriate on this claim.[3]

*ERISA Claim*

■ Barnes alleges that INA's failure to review his performance in 1982 resulted in an interference with his rights under 29 U.S.C. § 1140. Section 1140 prohibits discharging or discriminating against a participant or beneficiary of a retirement benefits plan in order to prevent or interfere with the attainment of those benefits. 29 U.S.C. §§ 1140. Nothing in the statutory language or in pertinent case law indicates that the section applies to the circumstances before the court. Moreover, the record does not support an inference that INA's failure to review Barnes' performance in a timely manner was an attempt to interfere with his retirement benefits. For these reasons, the court finds as a matter of law that summary judgment is proper on this claim.

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

*Suitable Alternative Position* Upon the giving of Notice, an internal job search shall be initiated immediately in an attempt to identify a suitable alternative position for the Eligible Employee within CIGNA Corporation. A suitable alternative position is one which:
—In the opinion of management, is a reasonable match to the employee's skills and experience;
—Is within *two* salary grades of the employee's existing grade and is within the employee's current geographical area.

---

2. The Policy on Internal Job Search is set out in its entirety in defendant's exhibit C. The pertinent parts state:

It is the policy of CIGNA Corporation to take steps to locate and offer a suitable alternative position in the corporation to Eligible Employees. Although efforts will be made to find a suitable alternative position for an Eligible Employee, no guarantee can be made that such a position can be found.

&ast; &ast; &ast; &ast; &ast; &ast;

*Internal Job Search* ... For Eligible Employees with 10 to 24 years of service, the formal internal job search will continue for up to an additional 7 weeks after the Severance Date....
*Application* This policy applies to Eligible Employees whose positions are eliminated for any reason including but not limited to reorganization, consolidation, department closing, or work force reduction.

&ast; &ast; &ast; &ast; &ast; &ast;

3. Plaintiff's complaint also claims that INA breached an implied covenant of good faith and fair dealing as a result of its alleged failure to conduct a job search. Neither the record nor plaintiff's memorandum support such a claim. Furthermore, Minnesota has not yet recognized such an implied covenant in all employment contracts. *See Mason v. Farmers Ins. Co.,* 281 N.W.2d 344 (Minn.1979).

1. Defendant's motion for summary judgment is granted with respect to counts 2 and 3, and they are hereby dismissed.

2. Defendant's motion for summary judgment is denied in all other respects.